# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A BLACK ALCATEL MODEL A405DL, CURRENTLY IN THE CUSTODY OF THE HENRICO COUNTY POLICE AT 7721 E. PARHAM ROAD, HENRICO, VA. | Case No. 3:20-SW- 39 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §§1951(a) and 2 | Hobbs Act Robbery and Aid and Abet |
| Title 18 U.S.C. §§ 924(c) and 2 | Use of a Firearm in a Crime of Violence and Aid and Abet |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Philip Johnakin, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/14/2020

/s/
*Judge's signature*

City and state: Richmond, Virginia

Honorable Roderick C. Young, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTIRICT OF VIRGININA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH WARRANT AUTHORIZING THE SEARCH OF CELLUAR DEVICE POSSESSED BY **ROBERT GRAHAM:**<br><br>A BLACK ALCATEL MODEL A405DL, CURRENTLY IN THE CUSTODY OF THE HENRICO COUNTY POLICE AT 7721 E. PARHAM ROAD, HENRICO, VA. | Case No. 3:20 SW 39 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Philip F. Johnakin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a **BLACK ALCATEL MODEL A405DL, CURRENTLY IN THE CUSTODY OF THE HENRICO COUNTY POLICE AT 7721 E. PARHAM ROAD, HENRICO, VA (SUBJECT DEVICE)** further described in ATTACHMENT A, for the things described in ATTACHMENT B.

2. Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have over eighteen years of law enforcement experience stemming from employment as a Police Officer with the Henrico County Division of Police. Currently, I am a duly appointed Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so since October 2015. I am assigned to the Richmond FBI's Central Virginia Violent Crimes

Task Force and my duties include investigating bank robberies, armored car robberies, extraterritorial offenses, kidnappings, armed carjackings, and theft of government property. I have investigated numerous criminal violations and have obtained arrest and search warrants. I have personally participated in the investigation set forth below. The crimes I investigate are violent and usually involve two or more individuals and I am familiar with the methods violent offenders use to conduct their illegal activities, to include their communication methods.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTORY PROVISIONS

4. Title 18 U.S.C. § 1951(a) and 2 – Hobbs Act Robbery, Aiding and Abetting

5. Title 18 U.S.C. § 924(c)(1)(a) and 2 – Brandishing a Firearm During and in Relation to a Crime of Violence, Aiding and Abetting

## PROBABLE CAUSE

6. The United States, through the FBI's Central Virginia Violent Crimes Task Force (CVVCTF) is conducting a criminal investigation involving the armed commercial robberies of Powhatan Drug Inc. d/b/a Powhatan Pharmacy ("Powhatan Drug") and Bremo Pharmacy within the Eastern District of Virginia.

7. On July 15, 2019, at approximately 8:30 AM, Powhatan Drug Inc. d/b/a Powhatan Pharmacy ("Powhatan Drug"), a pharmacy registered with the Drug Enforcement Administration under Controlled Substance Registration FP8052641 and located at 2105 Academy Road, Suite

#2, Powhatan, VA 23139, was robbed by two black males who took controlled substances valued at over $500.00. The suspects entered the pharmacy wearing masks, sunglasses, and hats covering their faces from view. Their skin tone remained visible despite the masks and other clothing. The suspects then fled the scene in a late model, dark-colored, four-door "sports utility" vehicle with obscured license plates. During the robbery, the suspects brandished a firearm and demanded controlled substances. The suspects restrained the pharmacist with force, utilizing commercial quality "zip-ties," binding the victim's hands and feet, and then fled the business.

8. Shortly before the suspects entered the pharmacy, someone placed a 911 call, claiming a gunman was at the Powhatan High School (possibly in an attempt to distract law enforcement from the area of the robbery). This report was investigated and was determined to have been unfounded. Through an emergency disclosure, investigators determined that the cellular telephone which was used to make the call was located at or near 2015 Academy Road, Powhatan, VA. The International Mobile Equipment Identity (IMEI) number of the cellular telephone used to make the 911 call was determined by investigators with the Powhatan County Sheriff's Department. The device was never activated with cellular service; however, the device still functioned to call 911.

9. The sale of the device used to make the unfounded 911 call, an ALCATEL Model A405DL cellular telephone, was traced to the Family Dollar store located at 2665 Hull Street, Richmond, VA 23224. Investigators traveled to 2665 Hull Street and located video surveillance evidence of a person matching the description of one of the suspects in the Powhatan Drug robbery purchasing an ALCATEL Model A405DL cellular telephone on July 14, 2019, at approximately 6:41 PM. Further examination of the video surveillance led to the identification of the vehicle operated by the subject as a vehicle matching the description of the robbery suspect vehicle.

10. Law enforcement was able to review video from the time the ALCATEL phone was purchased and observed that the person purchasing the telephone handled an advertisement card. The card was seized and examined. Subsequently, a fingerprint was recovered, which was later identified as belonging to **ROBERT LEVON GRAHAM (GRAHAM)**. Law enforcement subsequently searched the electronic databases belonging to the Virginia Department of Motor Vehicles and found **GRAHAM** owned a blue, 2008 Audi, sports utility vehicle which matched the vehicle seen at the Powhatan Drug robbery. **GRAHAM** listed his address as 506 REGENTS CROSS LANE, APARTMENT 1C, HENRICO, VIRGINIA **(SUBJECT RESIDENCE 1)**. Investigators drove by **SUBJECT RESIDENCE 1** and observed a vehicle registered to **GRAHAM,** and noted it matched the description of the vehicle used in the robbery of Powhatan Drug.

11. On May 19, 2019, Graham filed a report with Richmond City Police Department in reference to a hit and run. At that time, **GRAHAM** provided the number **804-874-6751 (SUBJECT TELEPHONE NUMBER 1)**. Members of the DEA Tactical Diversion Units used legal process to obtain **GRAHAM**'s call detail records. A review of **GRAHAM**'s records showed a significant number of contacts between **SUBJECT TELEPHONE NUMBER 1** and a phone number, **804-779-5527 (SUBJECT TELEPHONE NUMBER 2)**. Agents later used legal process and found that the subscriber to this number was **RASHAD JAVELL FRAIERSON (FRAIERSON)**.

12. On November 25, 2019, at approximately 5:57 PM, Bremo Pharmacy, a pharmacy registered with the Drug Enforcement Administration under Controlled Substance Registration AB6931112 and located at 2024 Staples Mill Road, Henrico, VA 23230, was robbed by two black males who took controlled substances valued at over $19,000.00. The suspects entered the

pharmacy wearing masks, sunglasses, and hats covering their faces from view. The suspects' skin tone remained visible despite the masks and other clothing. The larger suspect held the pharmacy workers at gunpoint as the second suspect removed controlled substances from the "drug locker." During the robbery, the suspects brandished a firearm and demanded controlled substances. The suspects restrained the pharmacist with force, utilizing commercial quality "zip-ties," binding the victim's hands and feet, and then fled the business.

13. On December 2, 2019, law enforcement was contacted by a Source of Information (SOI) who has provided information to Henrico County Police and Richmond City Police on multiple occasions in the past. The SOI stated he/she has known **FRAIERSON** for more than 1 year. The SOI knows **FRAIERSON** to have a small semi-automatic handgun and he/she believes it to be a 9mm. The SOI has seen **FRAIERSON** sell drugs during the time he/she has known him. The drugs the SOI has seen **FRAIERSON** sell includes cocaine, heroin, and a number of prescription pills, including Oxycodone, Oxycontin, and others. In a conversation the SOI and **FRAIERSON** had a couple of months ago, **FRAIERSON** told the SOI he had robbed a pharmacy. In another conversation after November 25, 2019, **FRAIERSON** told the SOI he had robbed another pharmacy. The SOI stated he/she had looked at the still images released by Henrico County Police after the Bremo Pharmacy and recognized the tattoos on the thinner suspect as similar to a tattoo **FRAIERSON** has.

14. The SOI further provided agents with the number **804-779-5527**, which was the number he/she used to contact **FRAIERSON,** and with the address out of which **FRAIERSON** used to sell drugs and where he resides, identified as 2906 Hull Street, Richmond, Virginia.

15. On December 4, 2019, agents used a SOI to conduct a controlled purchase of Oxycodone from **FRAIERSON**. The SOI was searched before and after and found to free of any

contraband and all United States currency was removed from his/her person. The SOI was then provided with official government funds. The SOI drove to 2906 Hull Street, Richmond, Virginia. After a period of time, **FRAIERSON** arrived. He then sold the SOI two Oxycodone pills.

16. Members of the DEA Tactical Diversion Units used legal process to obtain **GRAHAM**'s call detail records for **804-874-6751**. As a result of the analysis of GRAHAM's call detail records, agents were able to identify **804-801-9874 (SUBJECT TELEPHONE NUMBER 3)** as a second number used by **GRAHAM.** Agents again used legal process and found **GRAHAM** was listed as subscriber to this number.

17. Agents obtained search warrants from this Court for call location records with location records for **SUBJECT TELEPHONE NUMBER 3** and **SUBJECT TELEPHONE NUMBER 2.**

18. Agents then conducted historical cell site analysis of the records for **SUBJECT TELEPHONE NUMBER 3** for November 25, 2019, the day of the Bremo Pharmacy robbery. The records for **SUBJECT TELEPHONE NUMBER 3** show the cellular device utilized a cell tower in the area of the Bremo Pharmacy at multiple times between 5:22 PM and 5:53 PM. At 6:03 PM, the records showed the cellular device was no longer utilizing the cell tower near the Bremo Pharmacy, but utilized a cell tower further away from the Bremo Pharmacy towards the south of the Bremo Pharmacy. At multiple times between 6:30 PM and 6:57 PM, the cellular device used cell towers in the area of Midlothian Turnpike and German School Road, in south Richmond, Virginia.

19. Agents then conducted historical cell site analysis of the records for **SUBJECT TELEPHONE NUMBER 2** for November 25, 2019, the day of the Bremo Pharmacy robbery. The records for **SUBJECT TELEPHONE NUMBER 2** showed the cellular device used cell

towers in the area of the Bremo Pharmacy at multiple times between approximately 7:50 AM to 11:30 AM and then around 4:30 PM. From 6:55 PM to 6:58 PM the cellular devices used cell towers in the area of Midlothian Turnpike and German School Road, in south Richmond, Virginia.

20. Agents have reviewed the video from the robbery of the Bremo Pharmacy on November 25, 2019, and compared the physical characteristics of the suspects in the video with **GRAHAM** and **FRAIERSON**. The physical build of the larger suspect who held the victims at gun point is similar to **GRAHAM**. The physical build of the suspect who removed the controlled substances from the drug locker is similar to **FRAIERSON**. The skin tone of **GRAHAM** and **FRAIERSON** is similar to the suspects from the robbery.

21. On January 31, 2020, law enforcement executed federal search warrants at **SUBJECT RESIDENCE 1** and **SUBJECT RESIDENCE 2**. As a result of the search of **SUBJECT RESIDENCE 1**, law enforcement located and arrested **GRAHAM,** who was arrested for Hobbs Act Robbery and Use of a Firearm in a Crime of Violence. Law enforcement located and seized the **SUBJECT DEVICE** from inside **SUBJECT RESIDENCE 1**. Law enforcement interviewed Brandy Harris at **SUBJECT RESIDENCE 1**. Harris identified the **SUBJECT DEVICE** as **GRAHAM**'s cellular device. The **SUBJECT DEVICE** does not appear to be the same cellular device used to make the 911 Call on July 15, 2019.

22. There is probable cause to believe that **FRAIERSON and GRAHAM are** involved in the pharmacy robbery in Henrico County; that **GRAHAM** has been utilizing **SUBJECT DEVICE**; and, that searching **SUBJECT DEVICE** may produce evidence of the crimes committed by **GRAHAM and FRAIERSON**.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described In the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that IS necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICE** to human inspection to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine the **SUBJECT DEVICE** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SPECIFICITY OF SEARCH WARRANT RETURN AND NOTICE REGARDING INITIATION OF FORENSIC EXAMINATION

27. Consistent with the Court's current policy, the search warrant return will list the model and serial number of the **SUBJECT DEVICE**, and include a general description of any and all associated peripheral equipment that has been seized. Additionally, the search warrant return will include the total numbers of each type of digital media that has been seized (e.g., "ten (10) 3.5" diskettes; twenty (20) CDs; twenty (20) DVDs; three (3) USB drives; one (1) 256 MB flash memory card," etc.)

9

28. Moreover, the United States will file a written pleading in this case within one hundred and twenty days after the execution of the search warrant notifying the Court that the imaging process of digital evidence seized is complete, and the forensic analysis of the **SUBJECT DEVICE** has begun. Such notice will include confirmation that written notice has been provided to the defendant or his counsel informing the defendant that the forensic examination of evidence seized from him has actually begun. Such notice to the defendant and the Court is not intended to mean, and should not be construed to mean, that the forensic analysis is complete, or that a written report detailing the results of the examination to date will be filed with the Court or provided to the defendant or his counsel. This notice does not create, and is not meant to create, additional discovery rights for the defendant. Rather, the sole purpose of this notice is to inform the defendant that, beyond the simple seizure of his property, a forensic search of that property has actually begun.

## CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Philip Johnakin
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this __14__ day of February 2020

/s/ _____
Roderick C. Young
United States Magistrate Judge

10

## ATTACHMENT A

**Person and Property to Be Searched**

This warrant applies to information associated with

A BLACK ALCATEL MODEL A405DL, CURRENTLY IN THE CUSTODY OF THE HENRICO COUNTY POLICE AT 7721 E. PARHAM ROAD, HENRICO, VA.

## **ATTACHMENT B**

a. All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 18 U.S.C. § 1951 (a) and 2 & 18 U.S.C. § 924(c) and 2, and involve **ROBERT GRAHAM**, including:

a. Notes, ledgers, messages, and similar records relating to the transportation, ordering, purchasing, and distribution of controlled substances.

b. Address books, phone books, applications ("Apps"), and similar records reflecting names, addresses, telephone numbers and other contact or identification data.

c. Applications and records relating to drug trafficking income, income from robberies, and expenditures of money and wealth, including bank records.

d. Calendars, applications, and other records referencing meetings, schedules, and interstate and foreign travel.

e. Digital photographs, videos, or audio recordings of confederates, assets, or controlled substances, the spending of robbery and drug proceeds, and specific locations connected to the user of the phone.

f. Stored communications, including text messages, MMS messages, and voicemails.

g. Any subscriber or owner information for the cellular telephones.

h. Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones.

i. Location data stored on the device.

j. User Identification and Passwords for native and third party applications.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.